IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES D. SHALES, JOHN PAVLAK, )
and TAMARA L. SMITH, )
 )
Plaintiffs, )
 ) 04 C 8358
v. )
 ) Judge George W. Lindberg
GENERAL CHAUFFEURS, SALESDRIVERS )
AND HELPERS LOCAL UNION NO. 330, et al., )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the court is defendants' joint motion for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. This court referred the motion to Magistrate Judge Keys. Following briefing, Judge Keys issued a Report and Recommendation that recommends granting the motion in part and denying it in part. One of plaintiffs' attorneys, James Gordon Banks, filed objections to Judge Keys' Report and Recommendation. Having reviewed the parties' arguments and the evidence, the court overrules Banks' objections, accepts in part and modifies in part Judge Keys' Report and Recommendation, and grants in part and denies in part defendants' sanctions motion.

### I. Background

Plaintiffs, through Banks, filed this action on December 30, 2004. Plaintiff James Shales is a member of General Chauffeurs, Salesdrivers and Helpers Local Union No. 330 ("Local 330"). Plaintiffs John Pavlak and Tamara Smith were members and employees of Local 330. Plaintiffs asserted claims against Local 330; members of Local 330's Executive Board; Local 330's president, Dominic Romanazzi; Teamsters president James P. Hoffa; Hoffa's personal

representative to Local 330, William Moore; the City of Elgin; and three members of the Elgin Police Department.

Plaintiffs filed an amended complaint on May 26, 2005, and a second amended complaint on August 3, 2005. Among other claims, the twelve-count second amended complaint alleged that Romanazzi, Local 330's Executive Board, Moore, and Hoffa entered into a civil conspiracy to allow Romanazzi to assert autocratic control over Local 330 and turn Local 330 over to elements of organized crime, and in so doing, also violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The second amended complaint also alleged that Romanazzi and Local 330 intentionally inflicted emotional distress on Smith when Romanazzi forced her to resign from her employment with Local 330.

Defendants filed motions for summary judgment on January 13, 2006. On February 10, 2006, attorney Michael Leonard filed an appearance on behalf of plaintiffs, and filed plaintiffs' responses to some of the defendants' motions for summary judgment. This court ruled on the summary judgment motions on March 24, 2006.

On June 9, 2006, Leonard moved to withdraw his appearance as counsel for plaintiffs. The court granted Leonard's motion.

On July 26, 2006, defendants filed their joint motion for sanctions. In their motion, defendants ask the court to impose sanctions against plaintiffs, Banks, Leonard, and Banks' and Leonard's law firms.

In his Report and Recommendation, Judge Keys recommends imposing sanctions against plaintiffs' counsel for pursuing the civil conspiracy and RICO claims beyond the close of discovery; for filing and continuing to pursue Smith's intentional infliction of emotional distress

claim; and for filing an affidavit during the sanctions proceedings that contained unsupported conclusions and arguments, and mischaracterized evidence in the record. Judge Keys recommends imposing a sanction in the amount defendants have expended in defending against these claims and in responding to these allegations. Judge Keys recommends denying the remainder of defendants' sanctions motion.

Banks objects to Judge Keys' recommendations on the basis that Judge Keys improperly used a subjective standard to evaluate Banks' conduct under Rule 11. Banks also argues that his conduct was not objectively sanctionable. Finally, Banks argues that Judge Keys' recommended sanction is overly severe. Leonard did not object to the Report and Recommendation, but rather filed a "response" that requests denial of the motion for sanctions.

## II. Analysis

The court referred defendants' sanctions motion to Judge Keys pursuant to 28 U.S.C. § 636(b)(1)(B). See Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 868-69 (7th Cir. 1996) (resolution of a sanctions request is a dispositive matter referable to a magistrate judge for a report and recommendation). Thus, the court must "make a de novo determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b). The court reviews unobjected portions for clear error. See Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999).

The court first addresses Banks' objection that Judge Keys improperly used a subjective standard to review Banks' conduct under Rule 11. In evaluating whether sanctions are appropriate under Rule 11, the court must "undertake an objective inquiry into whether the party or his counsel should have known that his position [was] groundless." Cuna Mut. Ins. Soc'y v.

3

Office & Prof'l Employees Int'l Union, Local 39, 443 F.3d 556, 560 (7th Cir. 2006) (citations omitted).

Contrary to Banks' argument, it is clear from Judge Keys' Report and Recommendation that Judge Keys did undertake an objective inquiry. Judge Keys correctly stated that he was evaluating the parties' conduct for "reasonableness under the circumstances." Judge Keys concluded that by the close of discovery, plaintiffs' counsel "should have known" that the civil conspiracy and RICO claims had no support in the record, and that Smith's intentional infliction of emotional distress claim had no support in the law. Judge Keys found that "[u]nder no circumstances" could the evidence in the record support a claim for intentional infliction of emotional distress under Illinois law, and observed that "any reasonable attorney would have realized that the intentional infliction of emotional distress claims could not succeed." The court overrules Banks' objection that Judge Keys used the wrong standard to evaluate Banks' conduct.

The court turns to Banks' argument that his conduct was not objectively sanctionable. Defendants seek sanctions both for violations of Rule 11 and under 28 U.S.C. § 1927. Rule 11 requires that an attorney presenting a document to the court certify that to the best of his knowledge, information, and belief, formed after a reasonable inquiry, the document is not being presented for an improper purpose, the claims and contentions are warranted by law, and the allegations and other factual contentions are supported by the evidence. Fed. R. Civ. P. 11(b). Under 28 U.S.C. § 1927, a court may sanction any attorney who "unreasonably and vexatiously" multiplies the proceedings.

The court first considers Judge Keys' conclusion that Banks' conduct relating to the civil conspiracy and RICO claims was sanctionable. Judge Keys observed that there was no evidence

in the record that indicated that the Executive Board members, Hoffa, and Moore were involved in Romanazzi's alleged scheme to suppress dissent within Local 330 and turn Local 330 over to elements of organized crime, or even that those defendants were aware of Romanazzi's alleged misconduct. Accordingly, Judge Keys concluded that, at least by the time discovery closed, plaintiffs should have known that the civil conspiracy and RICO claims were not viable.

In support of his objections, Banks states that he reviewed and relied upon "multiple pages of documents" in determining that the civil conspiracy and RICO claims were viable. Although Banks does not specifically identify all of these documents, he attaches "a portion" of them to his objections; apparently, Banks did not present these documents to Judge Keys. Defendants object to the court considering any evidence that was not previously offered in the proceedings before Judge Keys.

Although this court can consider additional evidence in its de novo review, see Fed. R. Civ. P. 72(b), Banks' documents offer nothing that would persuade the court that Banks had a legally sufficient basis to continue to pursue plaintiffs' civil conspiracy and RICO claims. These documents consist of: (1) an undated newspaper article that reported that federal authorities had proposed to end their oversight of the Teamsters' operations; (2) a November 7, 2004 newspaper article reporting that Pavlak had received a bullet in a Local 330 envelope, and recounting past allegations of intimidation from Shales and Local 330's former president (and Romanazzi's rival), Joseph Degand; (3) a three-page unattributed document headed "Issues Relating to Local 330" that discusses allegations made by Shales, Degand, and unidentified sources that Romanazzi had had contact with organized crime figures; (4) an April 28, 2004 letter of resignation from the Teamsters' anti-corruption program, which criticized Hoffa for failing to

support anti-corruption efforts; and (5) an undated article apparently written by a group of Teamsters members, titled "Investigations into Chicago Officials and Hoffa's Top Assistant Expand."

As with the evidence reviewed by Judge Keys, nothing in these documents would support pursuing plaintiffs' claims that the Executive Board defendants, Moore, and Hoffa were involved in Romanazzi's alleged scheme to assert autocratic control over Local 330 and turn Local 330 over to elements of organized crime. The court agrees with Judge Keys that plaintiffs should have known that there was no evidentiary support for these claims at least as of the close of discovery, and that plaintiffs' counsel should not have continued to pursue the claims after that point.

As the court noted in its March 24, 2006 order granting summary judgment in favor of defendants on these claims, plaintiffs identified no facts showing that Hoffa was aware of any illegal activity by Romanazzi, or entered into any agreement to commit unlawful acts. Plaintiffs identified no facts that would support an inference that Moore failed to meet his duty in such a way that could render him liable for civil conspiracy or a RICO violation. Plaintiffs offered no facts to dispute the Executive Board defendants' averments that they have never entered into any agreement with Romanazzi, Hoffa, Moore, or each other to take action against or fail to take action on behalf of Smith's employment with Local 330, to allow Romanazzi to assert autocratic control over Local 330, to eliminate Romanazzi's political opposition, to eliminate democracy within Local 330, or to turn Local 330 over to elements of organized crime. The court's decision to grant summary judgment in defendants' favor on these claims was not a close call.

The court overrules Banks' objections to Judge Keys' recommendation that the court

impose sanctions relating to plaintiffs' counsel's pursuit of the civil conspiracy and RICO claims following the close of discovery.

Next, the court evaluates Judge Keys' recommendation that the court sanction Banks for filing Smith's intentional infliction of emotional distress claim, and continuing to pursue that claim after Smith's deposition. Judge Keys observed that there was no evidence that Smith had suffered severe emotional distress, as required to sustain an intentional infliction of emotional distress claim under Illinois law. Judge Keys noted that Smith's only testimony regarding distress was that: (1) on one occasion in May 2004, she left the office crying, and her stomach cramped up from nerves, but she took no medications; (2) when Romanazzi fired her on August 2, 2004, he did it in such a way that she felt threatened; and (3) she suffered an asthma attack in early 2005, which apparently was unrelated to Romanazzi's alleged harassment. Judge Keys concluded that, at least as of the time of Smith's deposition, plaintiffs' counsel should have known that there was no legal support for Smith's intentional infliction of emotional distress claim, and that it appeared that there never had been any support for the claim.

Banks states that he filed the intentional infliction of emotional distress claim based on Smith's representations to him that Romanazzi's actions caused her severe emotional distress, and reasserts his position that Smith's deposition testimony supported his opinion that the claim was viable. Banks states that he also relied on "multiple pages of documents" in making his determination that the claim was viable, and identifies "a portion" of these documents: (1) the decision of the Illinois Department of Employment Security Appeals Division affirming Smith's disqualification for benefits, based on a finding that Smith voluntarily left her job; (2) Smith's November 5, 2004 notice of appeal to the Department of Employment Security Board of Review;

7

(3) unattributed notes of August 2004 interviews with Smith and Romanazzi; (4) Smith's August 6, 2004 form completed as part of application for unemployment benefits; (5) Smith's summary of various events that occurred between October 2003 and August 2004; and (6) August 2004 correspondence between Smith's attorney and Romanazzi, Smith and Moore, and Smith and Romanazzi.

The court has reviewed these documents, and finds that they do not establish any additional distress suffered by Smith that was not covered in her deposition. The court agrees with Judge Keys' conclusion that Banks should have known at the time he filed the intentional infliction of emotional distress claim that there was no evidence that Smith had suffered severe emotional distress, and consequently, that her claim was not viable. Banks' conduct in filing and continuing to pursue this claim (including defending it during the sanctions proceedings) is sanctionable.

The court next reviews Judge Keys' recommendation that the court sanction Banks for unreasonably multiplying the proceedings by filing an affidavit during the sanctions proceedings that contained conclusions and arguments that were unsupported in the record, and that mischaracterized the evidence. Judge Keys notes that in the affidavit, Banks cited testimony that did not support his assertion that Smith was forced from her employment with Local 330 because she exercised her right to dissent and her right to freedom of speech by speaking with investigators about Romanazzi's misconduct. In addition, Banks stated in his affidavit that the Executive Board defendants failed to act when Smith's rights were violated, despite the fact that Smith testified that she never told anyone that Romanazzi was harassing her. Finally, Judge Keys observes that Banks cited no evidence to support his statements in his affidavit that

8

Romanazzi received calls from organized crime figures at the Local 330 office and that Romanazzi got jobs for family members of organized crime figures.

In his objections to this recommendation, Banks states that evidence did exist for his statement that Romanazzi had received calls from organized crime figures, but that he simply did not present it to Judge Keys. Banks does not otherwise attempt to justify his other statements in his affidavit, except than to say that the affidavit "is arguable [sic] a by-product of his novice standing before this Court." The court agrees that Banks should be sanctioned for filing this affidavit, and overrules Banks' objection.

Banks finally argues that Judge Keys' recommendation that the court impose a sanction in the amount defendants expended in defending against these claims and in responding to the baseless allegations is "overly severe and unreasonable." Although Banks concedes that "few, if any, would heap accolades upon [him] with regard to his overall representation of the Plaintiffs in this matter," he maintains that his youth, overzealousness, and lack of experience are to blame, rather than bad faith. Banks contends that a stern admonition from the court would be a more appropriate sanction under the circumstances.

Banks' belief that an admonition would be a reasonable sanction under the circumstances demonstrates his utter lack of appreciation for the significance of his conduct. Indeed, the fact that Banks is so unconcerned about the seriousness of the sanctions proceedings that he has continued his sanctionable conduct during these proceedings is a strong indication that even the sternest admonition would have absolutely no effect on him. The court finds that the monetary sanction recommended by Judge Keys is appropriate as to Banks.

Finally, the court turns to the portion of defendants' motion that seeks to impose

9

sanctions against Leonard. In his response to the Report and Recommendation, Leonard takes the position that Judge Keys did not recommend that Leonard should be sanctioned. Leonard does not offer any objections to Judge Keys' recommendations.

Leonard's position is misguided. Although in the proceedings before Judge Keys, Leonard argued that he should not be sanctioned because his involvement in the case was extremely limited, Judge Keys ultimately recommended sanctioning "plaintiffs' counsel." Judge Keys did not limit this recommendation to Banks.

While it is true that Judge Keys' findings relating to the filing of Smith's intentional infliction of emotional distress claim and the filing of Banks' affidavit during the sanctions proceedings could not apply to Leonard, Judge Keys' other findings are applicable to Leonard. Leonard acknowledged during the proceedings before Judge Keys that he entered the case in part to assist Banks in responding to defendants' motions for summary judgment. Significantly, Leonard alone signed plaintiffs' memoranda in response to the summary judgment motions, which defended the intentional infliction of emotional distress, civil conspiracy, and RICO claims. For the same reasons discussed above, Leonard should not have pursued these claims.

Although the court agrees with Judge Keys' recommendation that plaintiffs' counsel be sanctioned for this conduct, the court believes that in Leonard's case the recommended monetary sanction would be overly harsh. Instead, based on Leonard's comparatively more limited role in the sanctionable conduct here, the court admonishes Leonard that his conduct was improper and should not be repeated. Except for this modification, the court accepts Judge Keys' Report and Recommendation.

**ORDERED:** Banks' objections to Magistrate Judge Keys' Report and Recommendation

are overruled. The court accepts in part and modifies in part the Report and Recommendation [310]. Defendants' motion for sanctions [238] is granted in part and denied in part. Defendants are directed to file, by April 16, 2007, a petition for attorneys' fees and costs reasonably incurred: (1) defending against plaintiffs' civil conspiracy and RICO claims since November 30, 2005; (2) defending against Smith's intentional infliction of emotional distress claim; and (3) responding to the allegations in Banks' October 3, 2006 affidavit. Banks' response to defendants' petition for fees, if any, is due on April 30, 2007.

ENTER:

*George W. Lindberg*

George W. Lindberg
Senior U.S. District Judge

DATED: __March 26, 2007__