IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES D. SHALES, JOHN PAVLAK, and TAMARA L. SMITH, | ) ) ) | |
| Plaintiffs, | ) ) | 04 C 8358 |
| v. | ) ) | Judge George W. Lindberg |
| GENERAL CHAUFFEURS, SALESDRIVERS AND HELPERS LOCAL UNION NO. 330, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants City of Elgin, Steven Bianchi, Jason Lentz, and George Wolf have moved for summary judgment as to plaintiff James Shales' claims against them in Counts VII through IX of the second amended complaint. Defendant Local 330 has moved the court to decline to exercise supplemental jurisdiction over Count VI and dismiss that claim. For the reasons stated below, both motions are granted.

**I. Factual Background**

Unless otherwise noted, the following facts are undisputed. On August 5, 2004, Dominic Romanazzi reported to the Elgin Police Department that he had received a fax that contained Romanazzi's personal information and the handwritten note: "DOM, YOU CAN RUN BUT YOU CAN'T HIDE. WE ARE WATCHING YOU AND THE BOYS." Romanazzi told the police that he suspected that Shales had sent the fax.

During the time relevant to this case, defendants Bianchi, Lentz, and Wolf were employed by the Elgin Police Department, Bianchi and Lentz as detectives, and Wolf as a sergeant. Wolf assigned Romanazzi's report to Bianchi for investigation. The fax had been sent

at a Kinko's store in St. Charles, Illinois. The store's surveillance videotape showed Shales standing at the sales counter at the time the fax was sent, although it did not show Shales sending a fax.

In the afternoon of September 24, 2004, Bianchi, Lentz, and Wolf went to Shales' home in St. Charles to question him about the fax. Bianchi and Wolf stood on Shales' porch, while Lentz remained near the garage. Shales answered the door, and spoke with Bianchi through a screen door. Bianchi informed Shales that Romanazzi had signed a complaint against him, and asked him to step outside. Shales refused to leave the house until he had spoken to his lawyer, and turned and started walking toward the kitchen.

Bianchi told Shales he was under arrest. According to Bianchi, he made this statement while he was outside the home; according to Shales, Bianchi stepped into Shales' home, and then told Shales he was under arrest. Shales asked if he could call his lawyer, put on his shoes, and gather his personal belongings before going to the police station. Bianchi told Shales that he could do these things, but that for safety reasons an officer needed to accompany him. According to Bianchi, Shales opened the screen door and allowed him inside the house; according to Shales, Bianchi followed him inside uninvited. Bianchi remained with Shales in the house while Shales made a telephone call and got his keys, cellular phone, and wallet.

After Shales and Bianchi left Shales' house, Bianchi patted Shales down. The officers placed Shales in an unmarked squad car and took him to the Elgin Police Department. Shales posted bond and was released. Shales was subsequently convicted of telephone harassment, a misdemeanor, for sending the fax to Romanazzi.

Count VII of Shales' second amended complaint, brought under 42 U.S.C. § 1983 against

Bianchi, Lentz, Wolf, and the City of Elgin, alleges that the officers violated Shales' Fourth Amendment rights by entering his house without a search warrant or Shales' consent, and arresting and searching him.  Count VIII alleges a state law battery claim against Bianchi, Lentz, and Wolf.  Count IX alleges an intentional infliction of emotional distress claim against Bianchi, Lentz, Wolf, and the City of Elgin.  In his response to the motion for summary judgment, Shales has withdrawn Count IX.

## II.  Analysis

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must draw all reasonable inferences in favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party bears the initial burden of demonstrating that no material issue exists for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A.  Section 1983 Claims

#### 1.  Collateral Estoppel

Defendants first argue that Shales' Section 1983 claims against the officers are barred by the doctrine of collateral estoppel.  In the criminal prosecution that arose from Shales' September 24, 2004 arrest, Shales moved to quash his arrest.  Defendants contend that because

the state court judge denied Shales' motions to quash, Shales cannot now relitigate the propriety of the arrest and entry into his house.

Collateral estoppel can bar a Section 1983 plaintiff from relitigating claims that were decided in state criminal proceedings. See Allen v. McCurry, 449 U.S. 90, 104 (1980). Since the preclusive effect of a state court judgment in a federal case is a matter of state law, the court applies Illinois' collateral estoppel rules. See Brokaw v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002). Under Illinois law, collateral estoppel applies when: (1) the issue decided in the prior adjudication is identical to the issue presented in the current action; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Herzog v. Lexington Township, 657 N.E.2d 926, 930 (Ill. 1995). In addition, "a decision on the issue must have been necessary for the judgment in the first litigation." Talarico v. Dunlap, 685 N.E.2d 325, 328 (Ill. 1997). Shales concedes that there was a final judgment on the merits in the criminal proceeding, and that he was a party to that proceeding.

In his criminal case, Shales filed two motions to quash arrest and suppress evidence. These motions asserted that Shales' arrest in St. Charles by officers of the City of Elgin was an illegal extraterritorial arrest, that he was arrested without a warrant and without probable cause, and that the officers did not have a search warrant for his residence. The state court denied the motions, finding that the Elgin police officers had probable cause to believe that Shales had committed an offense in Elgin, and that they were authorized to arrest Shales in St. Charles. The state court made no finding regarding Shales' claim that the officers entered his home without a warrant, however. Nor was the resolution of that claim necessary to the denial of Shales'

4

motions to quash or to Shales' conviction, since no evidence was found during the alleged illegal entry. The court concludes that collateral estoppel does not bar Shales' Fourth Amendment claim that Bianchi entered his home without a warrant.

### 2. Individual Defendants' Participation

The court next examines defendants Lentz's and Wolf's argument that they are entitled to summary judgment as to Shales' unlawful entry claim because they did not participate in the alleged unlawful entry into Shales' home. An individual is not liable under Section 1983 unless he caused or participated in a constitutional deprivation. Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1039 (7th Cir. 2003). A supervisor may be liable under Section 1983 if he knows about a subordinate's misconduct, and facilitates it, approves it, condones it, or turns a blind eye to it. Id.

Here, it is undisputed that Lentz did not enter Shales' home. Lentz stood approximately twenty feet away from Shales' door, and could not hear what Bianchi and Shales said during their conversation at Shales' door. Lentz was not a supervisor. Since there is no evidence that Lentz caused or participated in the alleged unlawful entry in any way, his motion for summary judgment as to Count VII is granted.

The court reaches a different conclusion as to Wolf, however. Wolf was Bianchi's supervisor, and stood on Shales' porch with Bianchi while Bianchi spoke with Shales and when Bianchi entered Shales' home. If Bianchi's entry into Shales' home was unlawful, Wolf could have known it and condoned it. Accordingly, Wolf is not entitled to summary judgment on the ground that he did not participate in the alleged misconduct.

### 3. Qualified Immunity

5

The court turns to the individual defendants' argument that they are entitled to qualified immunity as to Shales' Section 1983 claim. The court performs a two-step analysis to determine whether qualified immunity applies. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The first step is to determine whether there was a violation of a constitutional right, taking the facts in the light most favorable to the plaintiff. Id. If a constitutional violation could be made out under a favorable view of the plaintiff's facts, the second step is to determine whether "it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Id. at 202. Although qualified immunity is a defense, the plaintiff carries the burden of defeating it. Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007).

The court starts with the question of whether a constitutional violation occurred. According to Shales, Bianchi's entry into Shales' home violated Shales' Fourth and Fourteenth Amendment rights because the entry occurred without a warrant, without his consent, and prior to placing him under arrest. Defendants contend that the entry was justified by a fear for officer safety.

A suspect cannot be arrested in his home without an arrest warrant, even if probable cause exists, unless exigent circumstances excuse the failure to obtain a warrant. Payton v. New York, 445 U.S. 573, 588-89 (1980). Exigent circumstances may exist when there is "a compelling need for official action and no time to secure a warrant." United States v. Arch, 7 F.3d 1300, 1304 (7th Cir. 1993) (quoting United States v. Salava, 978 F.2d 320, 324 (7th Cir. 1992)). The need to protect officer safety can be an exigent circumstance that permits a warrantless entry. See United States v. Hardy, 52 F.3d 147, 149 (7th Cir. 1995). The court should weigh the seriousness of the offense for which the suspect is being arrested in

determining whether a warrantless arrest is reasonable.  See Welsh v. Wisconsin, 466 U.S. 740, 750 (1984).

In support of their claim that Bianchi's warrantless entry was justified by a fear for officer safety, defendants only offer evidence that a sergeant had told Wolf that Shales "liked to fight and was kind of a violent person," and that Wolf was told to be careful around Shales. Given that Shales was being arrested for a minor offense, that Shales did not act in a violent manner during the officers' contact with him at his door, and that there was no reason for the officers to believe that Shales kept weapons in the house, defendants have not shown the existence of exigent circumstances that would justify a warrantless, nonconsensual entry. Taking the facts in the light most favorable to Shales, Bianchi's entry into Shales' home was unlawful.

The court therefore turns to the second step of the analysis.  "Qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'"  Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Thus, qualified immunity applies, as long as the officers' actions "could reasonably have been thought consistent with the rights they are alleged to have violated."  Leaf v. Shelnutt, 400 F.3d 1070, 1080 (7th Cir. 2005) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)).

In his response to defendants' statement of material facts, Shales states that Bianchi told him he was under arrest when Bianchi entered the home.  It is undisputed that Bianchi advanced no more than twelve to fifteen feet into the house, however, that he stayed with Shales the entire time he was in the house, that he did not search anything, and that he was in the house no more

than two minutes. If the events transpired as Shales relates, Bianchi made a mistake in entering the house. However, the court concludes that Shales has not shown that Bianchi's actions were in knowing violation of the law, or so plainly incompetent as to strip Bianchi and Wolf of qualified immunity. Bianchi's and Wolf's motion for summary judgment as to Count VII is granted.

4. **Section 1983 Claim Against City of Elgin**

The City of Elgin argues that it is entitled to summary judgment on Shales' Section 1983 claim because Shales has failed to establish that Elgin had a custom, policy, or practice of condoning unconstitutional actions by its police officers. A municipal entity cannot be held vicariously liable under Section 1983 through the doctrine of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 694 (1978). Such an entity can be sued under Section 1983 only if the constitutional injury was: (1) authorized by express policy, (2) authorized through a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law, or (3) caused by a person with final policymaking authority. Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005).

Shales relies on the second method, arguing that a custom existed in the City of Elgin of failing to investigate complaints of improper searches and seizures, in contravention of a policy in the police department's standard operating procedures that all complaints against police department personnel be investigated.[1] In support of this claim, Shales has offered evidence that

---

[1] Shales did not respond to defendants' arguments relating to Shales' claim that Elgin failed to properly train its police officers. This portion of Shales' Section 1983 claim is deemed abandoned. See Palmer v. Marion County, 327 F.3d 588, 597 (7th Cir. 2003) (finding that claim not delineated in brief in opposition to summary judgment was abandoned).

defendant Bianchi has been sued twice, not including the present case, and that Bianchi is not aware of any internal investigation by the Elgin Police Department into the allegations made in the actions against him. Shales also argues in his brief that defendant Lentz has been sued twice, although this information is not included in his statement of additional facts, as required by Local Rule 56.1(b). Finally, Shales argues that defendant Wolf's failure to initiate an internal investigation into the circumstances alleged in this case, despite being a supervisor, and his promotion to lieutenant over a year after Shales' arrest, constitute further evidence of Elgin's widespread practice of failing to investigate complaints.

"When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." Palmer v. Marion Cty., 327 F.3d 588, 596 (7th Cir. 2003). Shales' evidence that a few lawsuits (whose factual circumstances and ultimate dispositions Shales does not provide) were filed over an unknown span of time does not establish a widespread practice by the City of Elgin that is so permanent and well-settled as to constitute a custom or usage with the force of law. Nor does Shales provide any reason why the litigation process would not be an adequate substitute for an internal investigation. Elgin's motion for summary judgment as to Shales' Section 1983 claim in Count VII is granted.

### B. Battery

Finally, the court considers the individual defendants' motion for summary judgment as to Shales' claim that they committed battery by patting him down following his arrest. Shales concedes that Lentz and Wolf are entitled to summary judgment as to this claim because they did

not make contact with him, but argues that Bianchi's motion for summary judgment should be denied because the patdown was not incident to a lawful arrest, and because it caused him embarrassment.

The Illinois Local Governmental and Governmental Employees Tort Immunity Act provides: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Bianchi patted Shales down incident to an arrest supported by probable cause. See United States v. Robinson, 414 U.S. 218, 235 (1973). As discussed above, even under Shales' version of the facts, Bianchi could have reasonably believed that his actions in entering the house were proper. Shales does not dispute that the patdown search was conducted in a normal manner, that it lasted no more than thirty seconds, and that there was nothing improper about it. The court finds that Shales has not shown that Bianchi's patdown of Shales after his arrest was willful and wanton. Therefore, Bianchi is immune from liability for the battery claim. The motion for summary judgment is granted as to Shales' battery claim in Count VIII.

### C. Pavlak's Retaliatory Discharge Claim

The only remaining claim in this action is plaintiff Pavlak's state law retaliatory discharge claim against Local 330 in Count VI. Local 330 urges the court to decline to exercise supplemental jurisdiction over this claim. The court may decline to exercise supplemental

jurisdiction over a claim when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When all federal claims are dismissed prior to trial, the district court generally should decline to exercise supplemental jurisdiction over remaining state law claims. Carr v. CIGNA Secs., Inc., 95 F.3d 544, 546 (7th Cir. 1996). The court agrees that declining supplemental jurisdiction over Count VI, and dismissing that claim without prejudice, is the appropriate course of action.

**ORDERED:** At plaintiff Shales' request, Count IX of the second amended complaint is dismissed. Defendants City of Elgin, Steven Bianchi, Jason Lentz, and George Wolf's motion for summary judgment [336] is granted. Defendant Local 330's motion to decline supplemental jurisdiction [335] over Count VI of the second amended complaint is granted, and Count VI is dismissed, without prejudice. Judgment will be set forth on a separate document and entered in the civil docket. See Fed. R. Civ. P. 58, 79(a).

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED:   May 2, 2007